UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL J. SCHMIDT,

                          Plaintiff,

v.                                                  5:14-CV-1223
                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

STANLEY LAW OFFICES                    JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.           JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 16) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Daniel J. Schmidt ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 15.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

Plaintiff was born on July 24, 1963. (T. 152.) He completed high school. (T. 172.) Generally, Plaintiff's alleged disability consists of epilepsy, high cholesterol, vision impairment, and "slow learner." (T. 171.) His alleged disability onset date is October 16, 2009. (T. 167.) His date last insured is December 31, 2014. (*Id.*) He previously worked as a "helping hand" at a grocery store and as a machine operator. (T. 172.)

   B. **Procedural History**

On January 9, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 167.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 12, 2012, Plaintiff appeared before the ALJ, Katherine Edgell. (T. 59-98.) On January 24, 2013, ALJ Edgell issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 15-26.) On August 14, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C. **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 20-23.) First, the ALJ found that Plaintiff met the insured status

2

requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since October 16, 2009. (T. 20.) Second, the ALJ found that Plaintiff had the severe impairments of seizure disorder and a learning disability/borderline intellectual functioning ("BIF"). (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; however, Plaintiff was limited to simple tasks and must avoid working at unprotected heights or around hazards. (T. 21.) Fifth, the ALJ determined that Plaintiff was capable of performing his past relevant work as a "helping hand" at a grocery store. (T. 23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ did not apply the appropriate legal standards in arriving at her mental RFC determination. (Dkt. No. 12 at 4-7 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ committed legal errors in evaluating Plaintiff's credibility. (*Id.* at 7-8.) Third, and lastly, Plaintiff argues the ALJ erred in finding that Plaintiff could perform his alleged past relevant work as a "helping hand." (*Id.* at 8-10.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the medical evidence in determining Plaintiff's mental RFC. (Dkt. No. 15 at 3-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly

assessed Plaintiff's credibility. (*Id.* at 8-10.) Third, and lastly, Defendant argues the ALJ correctly determined that Plaintiff could perform his past relevant work. (*Id.* at 10-12.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

5

with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Mental RFC Determination

Plaintiff argues the ALJ's mental RFC analysis was flawed because the ALJ failed to apply the "special technique" in her RFC analysis and the ALJ failed to conduct a function-by-function analysis of Plaintiff's mental impairments in accordance with SSR 96-8p. (Dkt. No. 12 at 5 [Pl.'s Mem. of Law].)

The "special technique" is used at steps two and three of the sequential process, not in formulating an RFC at steps four and five.[1] The Second Circuit held that in addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520a, an ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008).[2] SSR 96-8p stresses

---

[1] Plaintiff does not argue the ALJ failed to apply the "special technique" at steps two or three. (Dkt. No. 12 at 4-7 [Pl.'s Mem. of Law].)

[2] Second Circuit has explained:

This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the

that the "special technique" described in 20 C.F.R. 404.1520a is *not* an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detailed assessment." SSR 96-8P (S.S.A. July 2, 1996). Therefore, the ALJ did not err in failing to apply the "special technique" in her mental RFC assessment because the "special technique" is utilized at steps two and three, not at step four in formulating a plaintiff's mental RFC.

Plaintiff also argues the ALJ erred in her mental RFC analysis because she failed to comply with SSR 96-8p which states that a mental RFC "must be expressed in terms of work-related functions." (Dkt. No. 12 at 5 [Pl.'s Mem. of Law].) Namely, Plaintiff argues the ALJ made specific no findings as to the degree of Plaintiff's mental impairments in the areas of activities of daily living; social functioning; concentration, persistence, or pace; or episodes of decompensation. (*Id.* at 5-6.) The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013).

Here, the ALJ's RFC determination and analysis was adequately expressed in terms of work-related functions. For example, in the area of activities of daily living, the ALJ determined Plaintiff was able to take care of his personal needs, do chores, and

---

  reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265–66.

handle his finances. (T. 23.) In the area of social functioning, the ALJ discussed Plaintiff's testimony regarding his ability to participate successfully in sports and social outings. (*Id.*) The ALJ also discussed Plaintiff's ability to work competitively for a significant amount of time before being laid off. (*Id.*) The ALJ did not specifically discuss episodes of decompensation in his RFC analysis; however, the ALJ discussed episodes of decompensation at step three analysis during which she determined Plaintiff did not experience any episodes. (T. 21.) The ALJ's analysis of Plaintiff's limitations "provide[d] an adequate basis for meaningful judicial review, the ALJ's determination applie[d] the correct legal standards, and [the ALJ's determination was] supported by substantial evidence," therefore, remand is not recommended. *Cichocki,* 729 F.3d at 174.

The ALJ's mental RFC determination was supported by substantial evidence in the record. The only medical opinion in the record concerning Plaintiff's intellectual disability was provided by consultative examiner, Christina Caldwell, Psy.D. (T. 426-432.) Dr. Caldwell examined Plaintiff on November 5, 2012. (T. 426.) At that time Dr. Caldwell administered a standardized achievement test, the Wide Range Achievement Test, Fourth Edition (WRAT-IV). (T. 427.) Testing indicated Plaintiff had a full scale IQ of 79, which Dr. Caldwell indicated fell in the borderline intellectual functioning range. (*Id.*)

Dr. Caldwell completed a medical source statement based on her examination of Plaintiff and testing. Therein, Dr. Caldwell opined that in the area of concentration, persistence or pace, Plaintiff was mildly limited in his ability to: understand and remember simple instructions; carry out simple instructions; and make judgments on

8

simple work-related decisions. (T. 430.)[3] Dr. Caldwell opined Plaintiff was moderately impaired in his ability to: understand and remember complex instructions; and in his ability to carry out complex instructions. (*Id.*) Dr. Caldwell opined Plaintiff was markedly impaired in his ability to make judgments on complex work-related decisions. (*Id.*)

Dr. Caldwell opined Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting were affected by his impairments. (T. 431.) Specifically, Dr. Caldwell opined Plaintiff was mildly impaired in his ability to: interact appropriately with the public; interact appropriately with supervisor(s); and interact appropriately with co-workers. (*Id.*) Dr. Caldwell opined Plaintiff was moderately impaired in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*)

Dr. Caldwell's opinion was consistent with an ability to perform simple unskilled work, which the ALJ ultimately concluded Plaintiff could perform. (T. 21.) Plaintiff argues the ALJ erred because she did not assign Dr. Caldwell's opinion specific weight. (Dkt. No. 12 at 6-7 [Pl.'s Mem. of Law].)[4] To be sure, the Regulation states, "the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 404.1527(e)(2)(ii). However, any error by the ALJ to assign Dr. Caldwell's opinion a specific weight was harmless, as it is clear from

---

[3] The medical source statement form completed by Dr. Caldwell defined mild as "a slight limitation in this area, but the individual can generally function well." (T. 430.) Moderate was defined as "more than a slight limitations in this area but the individual is still able to function satisfactorily." (*Id.*) Marked was defined as a "serious limitation in this area. There is a substantial loss in the ability to effectively function." (*Id.*)

[4] Plaintiff appears to argue that failure to provide a specific weight, such as "great weight" or "little weight," is in and of itself error which warrants remand. Plaintiff did not include in his argument any indication that the ALJ's mental RFC determination was inconsistent with Dr. Caldwell's opinion.

the decision, and RFC determination, that the ALJ relied on Dr. Caldwell's medical opinion in formulating his mental RFC. As Defendant argues, although the ALJ did not provide Dr. Caldwell's opinion a specific weight, the ALJ considered the opinion and the ALJ's RFC determination was compatible with her opinion, therefore, the ALJ afforded the opinion considerable weight. (Dkt. No. 15 at 6 [Def.'s Mem. of Law].) Therefore, any error to assign a specific weight was harmless and remand is not recommended.

### B. The ALJ's Credibility Assessment

Plaintiff argues the ALJ committed legal error in her evaluation of Plaintiff's credibility because the ALJ failed to indicate how Plaintiff's testimony regarding his social activities undermined his claimed limitations and the ALJ "did not otherwise engage" in the factors required under 20 C.F.R. § 404.1529. (Dkt. No. 12 at 8 [Pl.'s Mem. of Law].) Defendant counters the ALJ's credibility assessment was proper. (Dkt. No. 15 at 8-10 [Def.'s Mem. of Law].)

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki,* 534 F. App'x at 75, (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, "these symptoms are not incompatible with all work activity." (T. 22.) The ALJ provided a proper and thorough credibility analysis in accordance with 20 C.F.R. § 404.1529.

The ALJ discussed the objective medical evidence in the record, specifically notations from Jolene Cook, N.P. and Dr. Caldwell. (T. 22.) The ALJ discussed

Plaintiff's testimony regarding his condition and symptoms and also testimony regarding his long past work history, his activities of daily living, his ability to socialize, and his ability to handle his own finances. (T. 21-23.) The ALJ properly adhered to 20 C.F.R. § 404.1529 in his credibility analysis. *See Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir.2004) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.")

### C. Plaintiff's Past Relevant Work

Plaintiff argues the ALJ erred in her determination that Plaintiff could return to his past relevant work as a "helping hand," because it was unclear if that work met the definitional requirements of past relevant work and further, the ALJ did not provide a meaningful evaluation of Plaintiff's past relevant work. (Dkt. No. 12 at 8-10 [Pl.'s Mem. of Law].) Defendant argues the ALJ properly determined Plaintiff's past work as a "helping hand" constituted past relevant work. (Dkt. No. 15 at 10-12 [Def.'s Mem. of Law].)

At step four of the sequential process an ALJ must determine if a plaintiff has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f). Past relevant work is work that was performed, either as plaintiff actually performed it or as it is generally performed in the national economy, within the last fifteen years or fifteen years prior to the date that disability must be established. *Id.* at § 404.1520(f). Further, the work must have lasted long enough for a plaintiff to have learned to do the job and have been performed as substantial gainful activity. *Id.* at §§ 404.1560(b), 404.1565(a). If a plaintiff can perform his past relevant work, then he is not disabled.

Here, the ALJ determined Plaintiff's work as a "helping hand" qualified as past relevant work. (T. 23.)[5] However, we need not address this question, as any error the ALJ may have made in classifying Plaintiff's past relevant work was harmless. At the hearing a vocational expert ("VE") testified that a person with Plaintiff's "vocational profile" who was also limited to "simple, repetitive tasks without exposure to hazards," would be able to perform work as a microfilm mounter (DOT 208.685-022), a ticketer (DOT 652.685-098), and a sorter (DOT 573.687-034). (T. 77.)[6] Therefore, even if Plaintiff could not perform his past relevant work, there were occupations that existed in the national economy in significant numbers in which the Plaintiff could perform. Therefore, remand is not recommended because any error the ALJ made in his evaluation of Plaintiff's past relevant work was harmless.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

---

[5] At the hearing a vocational expert testified that Plaintiff's past relevant work as a helping hand correlates to DOT 920.687-014 "cart attendant or bagger." (T. 77.)

[6] Plaintiff's "vocational profile" was outlined during the hearing as including past work as a machine operator (DOT 582.685-114) and "helping hand" (DOT 920. 687-014). (T. 76-77.) The VE testified that the occupation of microfilm mounter existed in numbers in excess of 20,000 in the national economy, ticketer existed in the national economy of approximately 30,000, and the occupation of sorter existed in numbers in excess of 10,000. (T. 77.)

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 14, 2015

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge